Pearson, J.
 

 The
 
 feme
 
 plaintiff owned the land in fee simple, and intermarried with the other plaintiff, who took possession, and there was issue born alive. Afterwards, the defendant entered' upon the land, and cut many timber trees. The action is case
 
 *31
 
 “in the nature of waste,” for the injury to the inheritance. The defendant
 
 insists
 
 — -first, case is not the proper action;
 
 secondly,
 
 the action is barred by the Statute of limitations, notwithstanding the coverture.
 

 A reversioner or remainderman could not bring a writ of waste against a stranger, because privity of estate was necessary to support the action. Hence, anciently, if a stranger broke the close of one having the particular estate, and besides injuring him by “treading down his grass,” taking away his crop, &c., also committed an injury to the inheritance, by cutting timber trees, tearing down houses, &c., the reversioner or remainderman was allowed to bring a writ of waste against the particular tenant; and he, in
 
 trespass quare
 
 clausum, besides damages for the immediate injury, was allowed to recover damages by way of reimbursement for his liability, on account of the injury to the inheritance. This was found, in many cases, to bear hard on the particular tenant, and the remedy was frequently an inadequate one for the reversioner or remainderman. For these reasons, it has been settled for upwards of a century, that the latter may bring
 
 case in the nature of waste,
 
 for the injury to the inheritance; and the former,
 
 trespass quare clausum,
 
 for the injury done immediately to him. 1 Chit. Plead. 50, 71, 2 Saund. Rep. 252, b.
 
 n.
 
 7.
 

 Upon this principle it is clear, where an injury is done after the death of the wife, the husband, as tenant by the curtesy, may in
 
 trespass quare clausum,
 
 recover for the immediate injury; and the representative of the wife may bring case, “in the nature of waste,” for the injury to the inheritance.
 

 On the part of the plaintiffs it is insisted that the principle applies, when the injury is done in the life-time of die wife, after issue born; for that, upon the birth of issue, the husband becomes tenant by the curtesy
 
 initiate,
 
 and is seized
 
 in his own right
 
 of a particular estate for life, which is separated by the act of law, leaving the inheritance as a reversion, of rvhich the husband and wife continue to be seized in
 
 right of the wife.
 
 This proposition is denied on the part of the defendant; for whom it is insisted that notwithstanding the birth of issué, there is no separation of the estate, and the husband and wife continue to be seized of the whole in right of the wife. So the case turns upon the single question: has a husband, after issue, any estate in his own right?
 

 
 *32
 
 Whether the husband has any estate in his own right before the birth of issue, is a question not now presented. But we think it clear, that upon the birth, of issue, he becomes, by act of law, entitled in his own right, to a separate estate for his life, and holds the reversion with his wife, in her right.
 

 The authority of my lord Coke is express. After issue, the husband receives homage and does homage alone, forfeits the land for treason or felony, and may by feoffment or bargain and sale, pass an estate for his own life;
 
 “
 
 for he is seized of an estate for his own life, in his own right,” Coke Lit. 67, a. All the elementary writers concur in treating this matter as settled, and give to the husband’s estate a name,
 
 i. e.,
 
 tenant by the curtesy initiate, as fully recognized and as familiar as that of tenant by the curtesy. McQueen on Husband and Wife, 27. In fact, by reason of the husband’s having this separate estate in his own right, and being also seized with his wife of the inheritance in her right, he has a greater control over the land than after he becomes tenant by the curtesy. He is not punishable for waste, or liable to forfeiture for making a feoffment in fee; and in the latter case, the estate of the wife was discontinued until remedied by Statute. On the same ground,,the incumbent of a benefice, being seized in his own right of an estate for life, and of the inheritance in right of his church, was not punishable for waste, &c.; and his feoffment in fee created a discontinuance at common law. It ds settled in our Courts, that the estate of the husband may be sold under execution, or by bargain and sale without joining the wife; and the purchaser taires an estate for the life of the husband, although the wife be living.
 
 Fagan
 
 v.
 
 Walker, 5
 
 Ire. 634, decides, that if, after issue born, the husband bargains and sells the wife’s land in fee, she has
 
 seven years
 
 after his death to bring her action; because
 
 “
 
 the husband has a particular estate in the lands of his wife, and her right of entiy does not accrue until his death.”
 
 u
 
 The estate in possession of such a vendee,” (the particular estate for tire life of the husband,)
 
 “
 
 and the remainder,” (or reversion,)
 
 “
 
 in fee of die rvife, form but different parts of one and the same entire estate.”
 

 The defendant’s counsel, pressed by these authorities, fell back upon a distinction,
 
 i.
 
 e.} although the husband by his act may sep
 
 *33
 
 arate the estate, yet it is not separated by act of law, so long as it continues in him. This distinction is not supported by any authority, and is at variance with the fact that an estate for his life may be passed by bargain and sale, or by sale under an execution. These conveyances operate by
 
 act of law,
 
 and pass nothing except what rightfully belongs to the bargainor or the ‘debtor, as his own separate estate.
 

 By way of further illustration, if husband dies, the growing crop belongs to his personal representative as emblements. This supposes him to have a separate estate in his own right 5 for, if lie held the estate
 
 as a whole, with the wife in her right,
 
 at his death she takes the land, and of course all that is a part of it. A trespasser takes away the growing crop — the husband is the party injured; for it is his crop, and the action of trespass
 
 q. c.f.
 
 should be in his own name. Several old authorities were cited to shew that he
 
 Quay
 
 join the wife; Cro. Car. 419. Jones 367. Hob. 189. In
 
 Frosdich
 
 v.
 
 Sterling,
 
 2 Mod. 269, it is said these cases warrant no more than that the wife
 
 may
 
 be joined, not that of neces-sit)r she
 
 must.
 
 But admit the wife may be joined, it proves nothing, because, to exclude the idea of a separate estate, it is necessary to show that the -wife
 
 must
 
 be joined, for if the husband
 
 may
 
 sue alone, it is on the ground that he has a separate estate in his own right.
 

 The cases in Comyn’s Digest, under title, “Baron & Feme,” when husband must, sue alone — when he
 
 may
 
 join the wife— when he must join the wife — which are also cited in Bac. Abrid., “ Baron & Feme,” page 500, evidently conflict; and it is impossible to deduce any principle from them. In
 
 Way & wife
 
 v.
 
 Bidgood,
 
 2 Black. Rep. 1236, they are called a “farrago of cases.” This is no doubt, because of the fact, that at the time most of them were decided, the principle'that a reversioner or re-mainderman might bring “case in the nature of waste,” against a stranger for an injury to the inheritance was not established; consequently where an injury was done directly to the husband by destroying his crop, and also to the inheritance by cutting timber trees, inasmuch as no action of waste could be brought, he was
 
 ex necessitate
 
 allowed, by joining the wife, to recover in trespass
 
 quare clausum fregit,
 
 not only for the immediate injury
 
 *34
 
 to him, but also for the injury to the inheritance; in the same way as any particular tenant might recover, not only for the immediate injury, hut also for the injury to tire inheritance, by way of reimbursement for his liability over. So that, if the husband sued alone, he recovered damages for the immediate injury. If he joined his wife, besides these damages, he also recovered damages for the injury to the inheritance. But after the principle was established that the reversioner might sue a wrongdoer in case
 
 <‘
 
 in the nature of waste,” the necessity no longer existed; and the practice of allowing the wife to be joined, (which had originated in that necessity,) no longer obtained, and the cases in which it had been allowed were considered of doubtful authority. It was said, there was no more reason for allowing the husband by joining his wife to recover in trespass for an injury to his crop, and also for an injury to her inheritance, than there was for allowing a tenant for life to join the reversioner, and so recover for an injury to both in one action; because the husband might sue alono in trespass for the injury to his crop, and join his wife in case, for the injury to her inheritance. . '
 

 Suppose a stranger injures the crop and also the inheritance; the husband brings trespass in the name of himself and wife for both injuries; the husband dies; the action as to the crop must abate, for it belongs to his representative; or the wife dies — tlieh the action as to the injury to the inheritance must abate, for that belongs to the wife’s representatives. And if in the one case, the husband is allowed to proceed for his part of the injury, and in the other the wife may proceed for her part, it would be an unheard of mode of splitting up an action, and a novel species of abatement as to a part. Or, suppose the husband dies before suit — then it is clear that his representative and the wife cannot join. The former can bring trespass for the injury to his intestate’s crop; what action can the wife bring for the injury to her inheritance? Certainly, itmust be case
 
 11
 
 in the nature of waste.” Upon what principle then, other than that of necessity, (which does not now exist,) can the husband be allowed, in his lifetime, to join in one action that Avhich, after his death, constitutes two distinct causes of action, belonging to two different persons ?
 

 The counsel then assumed the position that in ejectment for the
 
 *35
 
 wife’s land/she must bo joined as one of the lessors; and the effect of it was, to prevent the right of entry from being tolled, under the saving in the Statute in favor of
 
 femes covert.
 
 For this ho cited
 
 Caldwell
 
 &
 
 wife
 
 v. Black, 5 Ire. 463; and then very ingeniously deduced the conclusion, that the husband had no estate in his own right. The case cited is an authority for the position, that when the eviction is
 
 before
 
 the marriage, the wife must be joined, and her right of entry is saved. The reason is, her estate being devested at the time of the marriage, she had but a;
 
 mere
 
 right, and the husband not being seized during coverture', could take no estate in his own right;
 
 Gentry
 
 v.
 
 Wagstaff,
 
 3 Dev. 270: consequently, she must be one of the lessors. The action is to assert her right, and the husband is joined merely because of her incapacity. In such a case the conclusion is a legitimate one, that the husband has no separate estate.
 

 Butin our case the husband was seized during coverture; there was issue bom alive, and the eviction took place afterwards; and the question is, in this case,
 
 must
 
 the wife be joined? It is true she
 
 may
 
 be joined, and it is usual to join her; but the conclusion that the husband has no separate estate is not supported, unless she
 
 must
 
 be joined. The husband can, without joining tire wife, make a lease for years, which is valid until his death. This is clear — Bac. Abrid.
 
 u
 
 Leases and Terms for years;” consequently, he may bring ejectment without joining the wife. In Bac. Abrid.
 
 ce
 
 Ejectment,” it is considered as settled, that although the husband may join the wife, as her contracts relating to her estate'are but voidable during the coverture, yet it is not necessary that tire husband and wife should join in a lease to try the title to her estate. He alone might make a lease for that purpose, and several cases are cited, in which the husband has maintained ejectment on his own demise.
 

 It was then assumed, that when the eviction is
 
 after
 
 seisin by the husband and birth of issue, the entry is not tolled by seven years adverse possession, provided the wife is joined; and it was forcibly put that this tends to show that tire entry was the right of the wife, because it would be inconsistent to allow the husband to save his own right of entry, by taking shelter under his wife’s name. If the husband has an estate in his own light, there in.
 
 *36
 
 no reason why his entry should not be tolled, and the wife or her heirs have seven years after his death to assert her right. The idea therefore, that by joining the wife the husband can recover possession at any time during the coverture, notwithstanding an adverse possession of seven years, is inconsistent with the fact of his having a separate estate in his own right, and it is necessary to examine into the correctness of the position assumed as the basis of the argument.
 

 ■ It is obvious that the position conflicts with the reasoning and authorities before cited to show that the husband had air estate in his own right. No authority was cited to support it, and the counsel relied solely on an opinion,
 
 arguendo,
 
 of Chief Justice Rtn-’KiN, in
 
 Caldwell
 
 v. Black, where it is said, that in case of an eviction during coverture, seven years adverse possession does not toll the entry, because of the coverture of the wife.
 

 It is proper, therefore, to examine the grounds upon which the opinion is based. The cases of
 
 Took v. Glascock,
 
 1 Saund, 250,
 
 Polyblank
 
 v.
 
 Hawkins,
 
 Doug. 329, are relied on as precedents to show that the form of pleading is,
 
 “
 
 the husband and wife are seized in
 
 their demesne
 
 as of fee, in right of the wife.” It will be seen, however, that in both of these cases the wife had a
 
 reversion,
 
 and not an estate in possession. Of course tire estate is truly described by the words, the husband and wife were seized
 
 of the reversion in their demesne
 
 as of fee. These cases have no bearing on the question, whether the husband has a separate estate, where there is an estate in possession.
 

 The Statute 32, Hen. 8, was passed for the express purpose of éuabling the husband and wife to make a lease by matter
 
 in pais,
 
 which should be
 
 binding on her after coverture;
 
 because she. could not, like
 
 any
 
 other person having a reversion, confirm the lease by joining in its creation. This Statute is therefore consistent with’the fact of a separate estate in the husband, and cannot be made to bear on the question of ejectment, without going beyond its express object, and requiring the tenant in possession not merely to confess a lease, but to confess a lease with the nine requisites of the Statute,
 
 i. e.,
 
 that it was by indenture, &c., &c.
 

 McRee
 
 v.
 
 Alexander,
 
 1 Dev. 321, passes over the point
 
 sub sllcntio;
 
 and we are left to conjecture, whether it ivas because the
 
 *37
 
 Court did not think it an open question, or because it was overlooked. The latter is the most probable, for it certainly was not settled on the side for which it is used, in
 
 Caldwell
 
 v. Black, as all of the authorities cited in the first part of this opinion, are in conflict with it; and the case was submitted by the counsel for the plaintiff without argument. There was no counsel for the defendant, whose business it would have been to support the point.
 

 The other authorities cited support the decision, but conflict with the position assumed, arguendo;
 
 Allen
 
 v.
 
 Gentry, 2
 
 Law Repos. 609;
 
 Davis
 
 v.
 
 Cooke,
 
 3 Hawks 608. In both cases,
 
 the things
 
 were taken from the/eme,
 
 dum sola.
 
 At the time of the marriage she had no estate, but a right, in which the husband took nothing. So the action was hers — would survive toiler— and the husband was a necessary party merely because of her incapacity. She was under disability of infancy, when her cause of action accrued; she married under age; and as she had three years after disc-overture to bring her suit, there tvas no reason why it might not be brought for her at an earlier day. So, in
 
 Caldwell
 
 v.
 
 Black,
 
 the eviction was
 
 dum sola;
 
 the
 
 feme
 
 was under disability of infancy when the cause of action accrued; she married under age; and at the time of her marriage she had no estate, but a right, and the husband took nothing. It was her right of entry, and her action; and as, under the saving of the Statute, she had time to sue, until three years after diseoverture, there was no reason why the action might not be brought for her at an carli-. or day.
 

 The two cases cited, therefore, are on all-fours with the
 
 decision
 
 in
 
 Caldwell
 
 v.
 
 Black,
 
 but oppose the position assumed,
 
 ar-guendo.
 
 Suppose the wife in possession of the tilings at the time of her marriage, and they are taken from the possession of the husband; certainly lie must sue alone, and could not avoid the Statute by joining his wife. So, where the eviction of land takes place after the husband has possession, it is an injury to him, and joining the wife cannot avail him, if his entry ivas tolled. Or, if it was not, and lie died after recovery in ejectment, and before bringing an action for the mesne profits, the wife certainly would not be entitled to the profits, because they are in lieu of the crop which the husband would have raised during the coverture, but
 
 *38
 
 for the eviction; and his representative would be entitled to them as damages, for the injury done to his intestate.
 

 We have entered, somewhat at large into the discussion of this question, because we are aware, that although the distinction between taking things personal before and during coverture, is familiar to the profession, yet they have failed to advert to the fact, that the same distinction exists in regard to an eviction from the wife’s land,
 
 before and during coverture;
 
 and an impression prevails, that in ejectment the wife must be joined, as tvell when the eviction is during coverture as where it is before coverture; and consequently, that in either case, the right of entry is not tolled during the coverture, and the wife has only three years after dis-coverture to bring her action: whereas, in fact, although her entry is not tolled, when the eviction is before coverture, (she marrying while under age) and she has three years after discoverture in which to sue; yet when the eviction is during coverture, the husband has an estate for his life in his own right; his entry is tolled by seven years adverse possession; and the wife or her heirs, have seven years after his death to bring their action, because her right, of entiy did not accrue until his death. Like the case of a rever-sioner or remainderman, after an ordinary estate for life, who has no right, and is not required to look to it, until the determination of tire particular estate. This impression was probably occasioned by
 
 Jones
 
 v. Clayton, 2 Mur. 62, where it is held, that if husband nialces bargain and sale in fee and dies, the wife has only
 
 three
 
 years after his death to bring her action. This case was expressly overruled by
 
 Fagan
 
 v.
 
 Walker,
 
 in which it is held, that the wife or her heirs in such case have
 
 seven
 
 years after the death of die husband; for he had an estate in his own right for life, and her right of entiy did not accrue until (he determination of his estate. This would have corrected the erroneous impression, but. for an unfortunate
 
 dictum
 
 of the learned judge, (not called for by the argument, and in fact, inconsistent with it,) in which he says that, if after seisin and birth of issue, the husband is dissiezed, the wife will have only
 
 three
 
 years after his death to assert her claim. This is inconsistent with what he had before decided,
 
 i. e.,
 
 that the husband had an estate for life in his own right. Of course then, the wife could have no right of action until his estate deter
 
 *39
 
 mined, and had seven years after his death to bring her süit. The effect of this
 
 diciupi
 
 was no doubt increased by the position assumed arguendo, by the Chief Justice, in
 
 Caldwell
 
 v.
 
 Blacky
 
 which we have considered. When a
 
 principle
 
 is fixed on, the only way by which to keep the decisions uniform, and to support the pretensions of law to be considered a science, is to cany out the principle to all of its legitimate consequences;
 
 e. g.,
 
 having-settled the principle, that, after birth of issue, the husband is a freeholder, and is seized of an estate
 
 for life in his own rights
 
 it must be carried out so as to include all corrollaries.
 

 It was said in the argument, that tire idea of two actions for-an injury committed at one and the same time, and in fact by the same act, e.
 
 g.,
 
 if apple trees are cut down, an action of trespass by the husband for the loss of the fruit, and of case by husband and wife, for the injury to the inheritance — is incongruous; because there is a supposed identity of person, and the husband would receive the damages recovered in both actions. There is no incongruity, nor is it without precedent. A battery is committed on the wife; the husband and wife sue in trespass for the immediate injury to her person — tire husband sues alone in case for the loss of society, &c.; yet he gets the damages recovered in both actions. That is die reverse of our case, where the immediate injury being to the possession of the husband, he sues alone in trespass, and the injury to the inheritance is sued for by the husband and wife, in case, “in the nature of waste.”
 

 That the Statute of limitations does not bar, is a corrollary of the conclusion, that casein the nature of waste is the proper action. The rule is, where the wife must be joined, the Statute does not bar; for it is her carrse of action, and survives to her. Where the husband must sue alone, or may, at his election, join the wife, the Statute does bar; for it is his cause of action, and does not survive to the wife.
 

 Per Curiam. Judgment reversed, and
 
 venire de novo.
 
 awarded.